RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0115P (6th Cir.)
File Name: 01a0115p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

KENNETH A. TAKACS *et al.*,
       *Plaintiffs-Appellees,*

     *v.*

HAHN AUTOMOTIVE
CORPORATION, doing
business as AUTOWORKS,
INC.,
       *Defendant-Appellant.*

No. 99-4431

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 95-00404—Walter H. Rice, Chief District Judge.

Argued: December 1, 2000

Decided and Filed: April 13, 2001

Before: DAUGHTREY and MOORE, Circuit Judges;
CARR, District Judge.[*]

_____

[*] The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

1

————————————

**COUNSEL**

**ARGUED:**  Robert J. Brown, THOMPSON, HINE & FLORY, Dayton, Ohio, for Appellant.  Julie C. Ford, LOGOTHETIS, PENCE & DOLL, Dayton, Ohio, for Appellees.  Anne Payne Fugett, UNITED STATES DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, Washington, D.C., for Amicus Curiae. **ON BRIEF:**  Robert J. Brown, Teresa D. Jones, THOMPSON, HINE & FLORY, Dayton, Ohio, for Appellant. Julie C. Ford, John R. Doll, LOGOTHETIS, PENCE & DOLL, Dayton, Ohio, for Appellees.  Anne Payne Fugett, Paul Frieden, UNITED STATES DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, Washington, D.C., for Amicus Curiae.

————————————

**OPINION**

————————————

KAREN NELSON MOORE, Circuit Judge.  This case arises out of a claim for overtime pay brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by twenty-seven former managers and senior assistant managers ("the managers")[1] at Autoworks, Inc. ("Autoworks"), a company engaged in the sale of automotive parts and products.  On April 16, 1997, after reviewing the parties' cross motions for summary judgment, the district court granted partial summary judgment in favor of the managers and denied summary judgment for Defendant-Appellant, Hahn Automotive Corporation ("Hahn"), which had acquired Autoworks in November of 1993, holding that the managers were non-exempt employees entitled to overtime compensation and that Hahn could not assert the "window of

—————————————————————

[1]One of the managers, Helen Webb, was withdrawn as a plaintiff in this action prior to the entry of final judgment.

correction" defense to "preserve" exempt status for such managers. After resolving a number of further issues, the district court entered final judgment against Hahn and awarded damages to the managers on October 27, 1999.

Hahn now appeals the district court's judgment insofar as it concerns the partial grant of summary judgment regarding the managers' employment status and Hahn's ability to utilize the "window of correction" defense. For the reasons that follow, we **AFFIRM** the district court's decision that the managers were not exempt executive employees under the FLSA and that Hahn was not entitled to use the "window of correction" defense in this action.

## I. FACTS

On November 29, 1993, Hahn acquired Autoworks, a company with 159 automotive retail stores, a distribution center, and more than 1,400 employees, from Northern Automotive Corporation. After purchasing Autoworks, Hahn did not issue new operational or personnel policies for the company but instead continued to use and implement Autoworks's existing policies, including its policy on corrective action or disciplinary policy. This disciplinary policy provided that employees of Autoworks were subject to suspensions without pay for misconduct on the job. The policy further explained that members of management were also subject to such punishment, specifying that "if the [suspended] associate is a *member of management*, [the supervisor must] inform [his/her] payroll representative that the associate has been suspended . . . . If the associate was suspended to discipline them for violating company policy, they should not be paid for scheduled time missed." Joint Appendix ("J.A.") at 278 (Store Operations Manual) (emphasis added). The managers in this case assert that they were aware of this disciplinary policy during their employment at Autoworks and that they believed they could be suspended without pay for disciplinary reasons. In fact, from November of 1993, when Hahn purchased Autoworks, to June of 1995, seven members of management, including

three of the managers in this case, were suspended without pay for disciplinary infractions ranging from tardiness to failure to make a timely bank deposit. Additionally, for a total of twelve occasions, several members of management, including at least seven of the managers in this case, were threatened in writing with suspensions without pay because of disciplinary infractions.

In June of 1995, Hahn announced in a memorandum to all managers at Autoworks that it would not suspend any more managers without pay and that it would reimburse any managers who had suffered such suspensions.[2] According to Hahn, it was completely unaware of Autoworks's disciplinary policy until May of 1995 when another lawsuit was filed, and it immediately investigated and then eliminated the policy. Thereafter, Hahn reimbursed the seven managers who had been suspended without pay during the past year and a half for their lost wages.

Takacs and other managers filed suit in October of 1995, seeking unpaid overtime compensation due to them as a result of Hahn's violation of the FLSA, 29 U.S.C. § 207(a), plus liquidated damages and other appropriate relief. In considering the parties' cross motions for summary judgment, the district court granted the managers partial summary judgment on the grounds that they were non-exempt employees entitled to overtime compensation and that Hahn could not successfully assert the "window of correction" defense. The district court then granted Hahn leave to file a

---

[2]The memorandum read in relevant part:
It has come to our recent attention that when Autoworks, Inc. was owned by Northern Auto Corp. there may have been an unwritten policy that permitted managers and senior assistant managers to be suspended with no pay for various reasons. . . .

Any senior assistant manager or manager who was suspended without pay since October, 1993, should be contacted immediately and immediate arrangements for payment of all lost wages will be made.
J.A. at 59.

may assert the "window of correction" defense by reimbursing improperly punished employees, who were penalized for reasons other than lack of work. *See, e.g, Paresi v. City of Portland*, 182 F.3d 665, 668 (9th Cir.), *cert. denied*, 528 U.S. 874 (1999); *Childers v. City of Eugene*, 120 F.3d 944, 947 (9th Cir. 1997); *Balgowan v. New Jersey*, 115 F.3d 214, 219 (3d Cir. 1997). Unlike this court, those courts reached their conclusions without the benefit of the Secretary's interpretation of the "window of correction" regulation and, moreover, had not concluded that the employers in their cases had policies permitting impermissible disciplinary deductions or actual practices of making such deductions. Therefore, we find those cases to be unpersuasive. *See Whetsel*, --- F.3d ---, No. 00-2798, 2001 WL 322172, at *4-6. Indeed, the three circuits that have addressed this issue with the benefit of the Secretary's interpretation have reached the same conclusion that we arrive at today. *See Whetsel*, --- F.3d ---, No. 00-2798, 2001 WL 322172, at *5-6; *Yourman*, 229 F.3d at 128; *Klem*, 208 F.3d at 1092. *See also Belcher v. Shoney's, Inc.*, 30 F. Supp. 2d 1010, 1022-24 (M.D. Tenn. 1998); *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 257 (S.D.N.Y. 1997). In sum, we defer to the Secretary's interpretation of the "window of correction" regulation and, in so doing, hold that the district court did not err in refusing to allow Hahn to utilize the "window of correction" defense. Were we to hold otherwise, the "window of correction" defense could regularly be used by employers to evade their responsibilities under the FLSA to establish policies and practices consistent with the substantive requirements for an exemption from overtime requirements for executives, administrators, and professionals compensated on a salary basis.

### III. CONCLUSION

In conclusion, we affirm the district court's decision that the managers were not exempt executive employees under the FLSA and that Hahn was not entitled to utilize the "window of correction" defense in this action. Therefore, we **AFFIRM** the district court's judgment in this case.

Consequently, the Secretary's interpretation of the regulation is entitled to our deference, so long as it is reasonable.

We conclude that the Secretary's interpretation of the regulation, that the "window of correction" defense is not available to an employer who has a policy of making pay deductions from claimed salaried employees due to disciplinary infractions, is both reasonable and consistent with the FLSA regulations. Indeed, we agree that, when read in its entirety, the "window of correction" regulation allows use of the defense only after an employer has first demonstrated an intention to pay its employees on a salary basis. *See id.* at *4 ("Use of the word 'lost' suggests that an employer must first establish that it was entitled to the exemption, which requires *inter alia* that the employer demonstrate it was paying its employees on a salary basis."). We further agree with the Ninth Circuit that "[t]o interpret the rule otherwise would allow an employer to treat its employees as exempt for overtime purposes while, at the same time, intentionally failing to comply with the 'salary basis' rule." *Klem*, 208 F.3d at 1092. In essence, we believe that if employers could simply "use the window of correction to comply retroactively with the salaried-basis requirement," the "salary basis" test would be rendered "essentially meaningless." *Klem*, 208 F.3d at 1092; *see also Yourman v. Guiliani*, 229 F.3d 124, 128 (2d Cir. 2000), *cert. denied*, --- U.S. ---, 2001 WL 118614 (U.S. Mar. 19, 2001) (No. 00-1235). Because we consider the "window of correction" regulation to be ambiguous and because we do not believe that the Secretary's interpretation of the regulation is clearly erroneous or inconsistent with the FLSA regulations, we defer to such interpretation.

Therefore, in light of our previous determination that Hahn had both a policy that created a significant likelihood of impermissible deductions and a practice of making such deductions, we conclude that the district court did not err in determining that Hahn failed to show that it was entitled to utilize the "window of correction" defense. In so doing, we reject Hahn's argument that this court should follow the decisions of other circuits, which have held that an employer

renewed motion for summary judgment regarding whether the applicable FLSA regulations were arbitrary and capricious and thus invalid and whether a two-year, not a three-year, statute of limitations was applicable in this case because Hahn's actions were not willful. On May 28, 1997, Hahn filed a motion for reconsideration of the district court's decision concerning the managers' employment status and Hahn's ability to assert the "window of correction" defense and filed a renewed motion for summary judgment as authorized by the district court. On March 30, 1998, the district court denied Hahn's motion for reconsideration as it concerned the managers' employment status under the FLSA and Hahn's ability to utilize the "window of correction" defense and denied Hahn's renewed motion for summary judgment as it concerned the validity of the applicable FLSA regulations. The district court, however, granted Hahn's renewed motion for summary judgment as it related to the question of Hahn's willfulness under the FLSA. Hahn then filed a motion for interlocutory appeal of the district court's partial grant of summary judgment in favor of the managers, which the district court denied. After holding trials on the issue of whether Hahn was an employer under the FLSA and on damages, the district court entered final judgment for the managers, ordering Hahn to pay the managers damages and their counsel reasonable attorneys' fees and costs. Hahn's timely appeal of the final judgment focuses on the issues of the managers' employment status and Hahn's ability to utilize the "window of correction" defense.

## II. ANALYSIS

We review de novo a district court's grant of summary judgment. *See Aiken v. City of Memphis*, 190 F.3d 753, 755 (6th Cir. 1999), *cert. denied*, 528 U.S. 1157 (2000). Summary judgment is proper only when there is no dispute as to a material question of fact and one party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). Viewing all facts and inferences drawn therefrom in the light most favorable to the nonmovant, we then determine whether the evidence presented is such that a reasonable jury could find

for that party. *See Aiken*, 190 F.3d at 755 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In so doing, we review the district court's conclusions of law de novo and its findings of fact for clear error. *Id.*

## A.  Exempt v. Non-Exempt Status

Hahn argues that the district court erred in determining that managers at Autoworks were not executive employees exempt from the FLSA overtime compensation provisions because Autoworks's disciplinary policy did not create a significant likelihood of pay deductions due to disciplinary infractions, and Autoworks had no actual practice of making such deductions.  We disagree.

The FLSA provides that employees may not be required to work more than forty hours per seven-day week without overtime compensation at a rate not less than one and one-half times their regular pay.  29 U.S.C. § 207(a)(1). Workers who are employed in a bona fide executive, administrative, or professional capacity, however, are exempt from this overtime compensation provision.  29 U.S.C. § 213(a)(1).  Exemptions under the FLSA are narrowly construed against the employer. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *Klem v. County of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000).  Under the FLSA regulations, an employee must satisfy three short tests to be deemed an exempt executive, professional, or administrative employee: a (1) duties test; (2) salary level test; and (3) salary basis test. *See* 29 C.F.R. §§ 541.1, 541.1(f); 541.118; *see also* 29 C.F.R. §§ 541.2, 541.3.

The only test at issue in this case is the salary basis test, which provides that "[a]n employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work

regulations by the Secretary of Labor, even if they are provided in the form of a legal brief). *See also Christensen v. Harris County*, 529 U.S. 576, 588 (2000) ("[D]eference [to an agency's interpretation of its own regulation] is warranted only when the language of the regulation is ambiguous.").

In the amicus brief, the Secretary asserted that "an employer's objective *intention* to pay the employee on a 'salary basis' is determinative of whether an employer can use the 'window of correction.'"  Amicus Br. at 18.  The Secretary further explained that "[a]n employer that engages in a practice of making impermissible pay deductions, or has a policy that effectively communicates to its employees that such deductions will be made, necessarily has no intention of paying its employees on a 'salary basis,' and therefore has no recourse to the 'window of correction' for deductions made." Amicus Br. at 18-19; *see also id.* at 13 ("The 'window' should not be read to allow an employer to obtain the statutory overtime exemption where, as here, that employer has engaged in an actual practice of making impermissible deductions from pay pursuant to an established policy.").

Like the Seventh Circuit in *Whetsel v. Network Prop. Servs., LLC*, --- F.3d ---, No. 00-2798, 2001 WL 322172 (7th Cir. Mar. 29, 2001), we believe that the "window of correction" regulation is ambiguous regarding whether it can be used to correct a policy or practice of making improper pay deductions.  As the *Whetsel* court recognized, "the regulation does not explicitly state that it is available to correct a policy or pattern of deductions, thus leaving open the question of whether it applies to those circumstances." *Id.* at *3.  In other words, while the "window of correction" regulation may be interpreted as allowing use of the defense in all cases except for those where there is a policy or practice of making pay deductions for claimed salaried employees due to lack of work, it may also be read as allowing use of the defense only when an employer does not have a policy or practice of making pay deductions "because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a).

The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

29 C.F.R. § 541.118(a)(6). In *Auer*, the Supreme Court determined that the employer could invoke the "window of correction" defense by reimbursing the single employee whose pay had been reduced through a disciplinary deduction. In so doing, the Supreme Court rejected the argument that reimbursement of lost wages under the "window of correction" must be made immediately upon the discovery of the improper deduction and further held that the "window of correction" could apply to instances in which deductions had been made inadvertently or "for reasons other than lack of work." *Auer*, 519 U.S. at 463. The Supreme Court, however, did not address the central question in this case, which is whether an employer may utilize the "window of correction" defense if it had a policy that created a significant likelihood of disciplinary pay deductions for salaried employees or had an actual practice of making more than a single such deduction.

The Secretary of Labor, in an amicus brief, provides some guidance to interpreting the "window of correction" defense, however, and as the Supreme Court has noted, where the regulation at issue is ambiguous, the Secretary's interpretation of such regulation is controlling "unless plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461 (citation omitted) (noting that courts should defer to reasonable and consistent interpretations of the FLSA

performed." 29 C.F.R. § 541.118(a). Under this test, pay deductions that are made because of disciplinary violations are impermissible except in one instance – if they are "imposed in good faith for infractions of safety rules of major significance." 29 C.F.R. § 541.118(a)(5).

In *Auer v. Robbins*, 519 U.S. 452 (1997), the Supreme Court adopted the Secretary of Labor's interpretation of when a category of employees is considered to have satisfied the salary basis test under the FLSA, holding that an employer has not demonstrated an objective intent to treat a category of employees as exempt from the FLSA where that employer has an employment policy that creates a significant likelihood of disciplinary pay deductions or has an actual practice of making disciplinary deductions from such employees' pay. *See id.* at 461-63. *Auer* involved a claim for overtime pay by several sergeants and one lieutenant of the St. Louis Police Department, who maintained that they were not exempt employees under the FLSA because the city's police manual provided that department employees were subject to deductions in pay due to disciplinary infractions related to the quality and quantity of the work they performed and because one sergeant who had violated the city's residency requirement had actually received a deduction in pay for his infraction. *Id.* at 455, 463. In reviewing these officers' claims, the Supreme Court concluded that the officers were paid on a salary basis. The Supreme Court held that "[n]o clear inference [could] be drawn as to the likelihood of a sanction's being applied to" the officers because the city's police manual did not specifically identify the officers or other salaried employees as being subject to disciplinary pay deductions. *Id.* at 462. The Supreme Court explained that, in the absence of actual deductions, *see infra*, the Secretary's interpretation "require[d] a clear and particularized policy – one which 'effectively communicate[d]' that deductions [would] be made in specified circumstances" so as to "avoid[] the imposition of massive and unanticipated overtime liability . . . in situations in which a vague or broadly worded policy is nominally applicable to a whole range of personnel *but is not 'significantly likely' to be invoked against salaried*

*employees*." *Id.* at 461 (emphasis added). Thereafter, the Supreme Court concluded that no such policy existed in *Auer*. *Id.* at 462-63. Once the Supreme Court determined that there was neither a significant likelihood of impermissible pay deductions nor an actual practice of making such deductions by the St. Louis Police Department, it then held that the department could preserve the exempt status of the *one* officer who had received a disciplinary pay deduction under the "window of correction" defense, even though such deduction was not inadvertent and the officer had not already been reimbursed. *Id.* at 463-64.

Applying the test adopted in *Auer* to this case, we conclude that managers at Autoworks were not exempt executive employees under the FLSA because Autoworks's disciplinary policy created a significant likelihood of pay deductions from managers due to disciplinary infractions, and Autoworks had an actual practice of making such deductions from managers. First, unlike in *Auer* and in *Aiken*, where we concluded that Memphis police captains were exempt salaried executives under the FLSA, the disciplinary policy in this case explicitly states that members of management, not simply all employees, are subject to pay deductions due to disciplinary infractions, providing that "if [a suspended] associate is a *member of management*, [the supervisor must] inform [his/her] payroll representative that the associate has been suspended. . . . If the associate was suspended to discipline them for violating company policy, they should not be paid for scheduled time missed." J.A. at 278 (Store Operations Manual) (emphasis added). Furthermore, the policy details the procedures necessary to suspend an associate, even members of management, without pay for disciplinary infractions. When viewed together, we believe that both of these factors made the possibility of disciplinary pay deductions for managers at Autoworks more than a mere theoretical possibility and further show that Autoworks's policy "permit[ted] disciplinary or other deductions in pay 'as a practical matter.'" *Auer*, 519 U.S. at 461. *But see Ahern v. County of Nassau*, 118 F.3d 118, 121-22 (2d Cir. 1997) (reading *Auer* to require proof that a salaried employee's pay

would be docked if they committed a specific infraction); *see also Stanley v. City of Tracy*, 120 F.3d 179, 184 (9th Cir. 1997) (concluding that there was no significant likelihood of impermissible deductions because the employer implemented a review practice to avoid policies impacting salary basis employees in a way that would violate the FLSA).

Indeed, we also conclude that Autoworks had an actual practice of making deductions in the pay of its managers. As the record reveals, over the course of a year and half, Autoworks, under Hahn's management, suspended seven members of management, including three of the managers in this case, without pay for a variety of disciplinary infractions. In other words, every three months, Autoworks suspended at least one management employee without pay for disciplinary reasons. Moreover, for a total of twelve occasions during this year and a half period, several members of management, including at least seven of the managers in this case, were threatened in writing with disciplinary suspensions without pay for work violations. We believe that these occurrences, coupled with the fact that Hahn does not claim that these deductions occurred under unusual circumstances, sufficiently demonstrate that Autoworks had an actual practice of suspending its managers without pay for disciplinary reasons. In sum, we conclude that the district court correctly concluded that Autoworks had a policy that created a significant likelihood of impermissible disciplinary deductions in pay and that Autoworks had an actual practice of making such deductions.

## B.  "Window of Correction" Defense

Hahn also argues that the district court erred in concluding that it is not entitled to use the "window of correction" defense to "preserve" the exempt status of managers at Autoworks. We disagree.

The FLSA regulations define the "window of correction" defense as follows: