RENDERED: JANUARY 5, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0100-MR

RONALD D. HELD, JR.,
AND CAROL LEAR, ON BEHALF
OF THEMSELVES AND ALL
OTHERS SIMILARLY SITUATED                                            APPELLANTS


                        APPEAL FROM MADISON CIRCUIT COURT
v.                      HONORABLE COLE A. MAIER, JUDGE
                        ACTION NO. 18-CI-00294


HITACHI AUTOMOTIVE SYSTEMS
AMERICAS, INC.                                                       APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, GOODWINE, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Ronald D. Held, Jr., and Carol Lear, on behalf of themselves

and all others similarly situated, bring this appeal from a January 13, 2023,

summary judgment of the Madison Circuit Court dismissing their complaints

alleging the violation of Kentucky's wage and hour laws. We affirm.

This case centers upon whether Hitachi Automotive Systems Americas, Inc., (Hitachi) violated Kentucky Revised Statutes (KRS) 337.285(1) by failing to pay overtime compensation at a rate of one and one-half times the applicable hourly rate to supervisors employed at Hitachi production facilities in Berea, Kentucky.[1]

Held and Lear filed a class action on behalf of over 200 supervisors who currently work or had previously worked at the Hitachi facilities (hereinafter referred to as Supervisors). The circuit court certified the class action by order entered August 22, 2019, and the order was affirmed on appeal to the Court of Appeals in *Hitachi Automotive Systems Americas, Inc. v. Held*, Appeal No. 2019-CA-1318-ME, 2020 WL 2510534 (May 15, 2020).

In the class action, the Supervisors claimed that they routinely worked in excess of forty hours per week but were not paid the statutorily mandated rate of one and one-half times the applicable hourly rate per KRS 337.285(1). The Supervisors asserted that Hitachi improperly classified the Supervisors as executive or supervisory employees exempt from the overtime mandate of KRS 337.285(1). Specifically, the Supervisors asserted:

> 19. During the time period covered by this lawsuit, Plaintiffs and the Supervisors at Hitachi's Berea,

---

[1] The class was divided into two subclasses: (1) Supervisors employed by Hitachi any time from April 24, 2012, to the time of this action, and (2) Supervisors employed by Hitachi at any time from April 24, 2012, to June 13, 2016.

Kentucky, production facilities who they seek to represent have routinely worked in excess of 40 hours in a workweek.

20. In fact, Plaintiffs and the Supervisors routinely work 11 to 12 hours per shift, six (and sometimes seven) days per week. In other words, Plaintiffs and those they seek to represent routinely work 60 and 70 hours per week (and, in many weeks, even more than 70 hours).

. . . .

23. Supervisors use a timekeeping system operated and maintained by Hitachi to clock in and out to record their work time.

24. Hitachi tracks and records the number hours worked by the Supervisors to the minute.

25. The Supervisor work time tracked and recorded by Hitachi includes regular hours (*i.e.*, hours up to 40 in a workweek) and overtime hours (*i.e.*, hours over 40 in a workweek).

26. Hitachi tracks and records this time to the minute based on the Supervisors' time punches for pay purposes.

27. Hitachi pays the Supervisors for their work on an hourly basis based on their recorded work time in Hitachi's timekeeping system.

28. This hourly pay is for both regular hours (*i.e.*, hours up to 40 in a workweek) and overtime hours (*i.e.*, hours over 40 in a workweek).

29. However, Hitachi does not pay Supervisors overtime premium pay for all hours worked over 40 in a workweek at one and one-half times their regular rates of pay.

30. On occasions when Supervisors have not worked 40 hours in a workweek and have run out of Paid Time Off (PTO) or holiday pay benefits, Supervisors have been paid less than 40 hours in a workweek, because they recorded less than 40 hours worked in such workweeks.

31. In other instances, when Hitachi did not have work available, Supervisors have been paid less than 40 hours in a workweek.

32. Hitachi does not guarantee an amount of pay for Supervisors regardless of how many hours they work in a workweek.

33. Until June 13, 2016, Hitachi's pay practice was to pay Plaintiffs and other Supervisors the same hourly rate for all hours worked, including hours over 40 ("Pre-June 2016 Pay Practice").

34. Since June 13, 2016, Hitachi has capped the number of paid hours for Plaintiffs and the [S]upervisors they seek to represent at 50 in a workweek, though they routinely work more than 50 hours per week ("Post-June 2016 Pay Practice"). In other words, since June 13, 2016, Hitachi has paid Plaintiffs and other Supervisors the same hourly rate for all hours worked up to 50 in a workweek and does not pay them at all for hours in excess of 50 hours. Despite the fact that Hitachi has limited the pay for Supervisors to 50 hours in a week, Hitachi tracks all the time they work, including time worked in excess of 50 hours in a week, to the minute using its timekeeping system.

. . . .

56. Even if Hitachi does pay a salary as it contends, the facts demonstrate that it had an actual

-4-

practice of making improper deductions and therefore did not intend to pay Supervisors on a salary basis.

. . . .

58. In other words, even if Hitachi does pay a salary as it contends, any exemption from the KWHA [Kentucky Wage and Hourly Act] is lost with respect to all Supervisors during the pay periods when such improper deductions occurred because Supervisors were in the same job classification with the review of their pay and any deductions being made to it by the same member of management, the payroll administrator, who for most of the period covered by this lawsuit was Peggy Weston.

. . . .

67. Because Hitachi does not pay the Supervisors on a salary basis, but instead pays them on an hourly basis, they are not exempt from the overtime protections of the KWHA.

68. Even if Hitachi's purported salary is found to be a guaranteed amount that constitutes a salary, the amounts that Hitachi pays its Supervisors by the hour bears no reasonable relationship to their guaranteed amount.

69. Accordingly, Hitachi's failure to pay its Supervisors for all overtime hours worked at one and one-half times the regular rates of pay violates the applicable provisions of the KWHA.

. . . .

100. Plaintiffs bring this second cause of action as an alternative cause of action to the first cause of action asserted herein.

May 13, 2021, Amended Complaint at 4-6, 9-12, 18. Hitachi answered and denied violating KRS 337.285(1). Hitachi maintained that the Supervisors were executive/supervisory employees exempt from the overtime mandate of KRS 337.285(1).

Eventually, the Supervisors filed a motion for partial summary judgment, and Hitachi filed a motion for summary judgment. In their motion for partial summary judgment, the Supervisors pointed out that an employee must be paid one and one-half times her applicable hourly wage for overtime work per KRS 337.285(1); however, an employee does not include one employed in an executive or supervisory capacity as set forth in KRS 337.010(2)(a)2. To be considered either an executive or supervisory employee exempt from the overtime mandate of KRS 337.285(1), the Supervisors argued that such employee must be compensated on a salary basis pursuant to 803 Kentucky Administrative Regulations (KAR) 1:070 Section 2(a) and 803 KAR 1:070 Section 5(2). The Supervisors maintained that they were not paid on a salary basis, and thus, they were entitled to the statutory overtime rate of pay set forth in KRS 337.285(1). In fact, the Supervisors asserted that Hitachi paid them on an hourly basis without a guaranteed predetermined amount of pay and did not pay them on a salary basis per 803 KAR 1:070 Section 10. In particular, the Supervisors maintained:

> KRS 337.010 excludes from the definition of
> "employee," and the overtime and minimum wage

protections that attach to employee status, certain categories of workers, including "[a]ny individual employed in a bona fide executive, administrative, supervisory, or professional capacity." Hitachi contends that its Berea Supervisors fall into two of these categories: executive and supervisory. *See* Def.'s Answers to Plfs.' 2d Requests for Admission at Nos. 2, 4 (Exhibit 32). Under the relevant regulations, to qualify as bona fide executive and supervisory employees, the Supervisors must satisfy the "salary basis" test (as well as the "duties test" which is not at issue here). 803 KAR 1:070 § 2(1)(a) (executive) and § 5(2) (supervisory).

To be paid on a salary basis, as set forth above, an employer must pay "a predetermined amount constituting all or part of the employee's compensation" that "is not subject to reduction because of variations in the quality or quantity of the work performed" on "a weekly, or less frequent basis." 803 KAR 1:070 § 10(1)(a). This, in turn, requires a "guarantee" of a certain amount. *See generally*, *Hughes*, 878 F.3d at 190-193. And, where such an employee is paid on an hourly, daily, or shift basis, there are additional requirements, including that there *also* be a guarantee paid on a salary basis regardless of the amount of time worked. 803 KAR 1:070 § 11(2).

In short, where a worker is paid on an hourly basis and there is no guarantee, that worker is not paid on a salary basis. Where pay is not on a salary basis, there is no executive or supervisory exemption. And, where there is no exemption, the worker is an employee entitled to the overtime protections of the KWHA. KRS 337.285 (requiring that employers pay employees for hours worked over 40 in a workweek "at a rate of not less than one and one-half (1-1/2) times the hourly wage rate").

In short, because there is no dispute that Hitachi paid Supervisors on an hourly basis without a guarantee, the Supervisors are employees entitled to overtime under the KWHA as a matter of law. . . .

. . . .

Plaintiffs and the Class believe the undisputed facts show that Hitachi paid them by the hour without any guaranteed minimum amount, as explained above. However, even if the Court concludes there was no guarantee or leaves that question for the jury, there is no reason to leave open the legal question of whether or not the "reasonable relationship" requirement of the KWHA applies.

. . . .

To meet the "reasonable relationship" test, the weekly guarantee must be "roughly equivalent to the employee's usual earnings at the assigned hourly, daily, or shift rate for the employee's normal scheduled workweek." *Id.* Here, even if there is found to have been a guarantee, the Supervisors' long hours and the resulting hourly pay over and above the supposed guarantee caused the amount they actually earned to so exceed the supposed guarantee that the two are not reasonably related.

. . . .

Regardless of the outcome on the issues above, Hitachi has admitted that its hourly adjustments of "regular wages" constituted improper salary deductions under the KWHA. *See* Section G, *supra*. Whether Plaintiffs and the Class are found to have been paid by the hour without a guarantee or on a salary basis is immaterial to this claim.

The KWHA's regulations, specifically 803 KAR 1:070 § 10(2), permit certain deductions from a salary to lawfully be made (including, for example, full-day deductions for full-day absences, disciplinary suspensions, and FMLA leave; offsets for jury duty or military compensation; and proportional reductions for

partial work in initial and terminal weeks of employment).  These are exceptions to the general rule that an "employee shall receive his or her full salary for any week in which the employee performs any work without regard to the number of days or hour worked."  803 KAR 1:070 § 10(1)(a).  They are also exceptions to the rule that deductions may not be made from an employee's salary "for absences occasioned by the employer or by the operating requirements of the business."  803 KAR 1:070 § 10(1)(b).  However, where deductions do not fall within the enumerated exceptions, an employer "shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis."  803 KAR 1:070 § 10(4)(a).

However, where deductions do not fall within the enumerated exceptions, an employer "shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis."  803 KAR 1:070 § 10(4)(a). . . .

. . . .

Here, the undisputed facts show that Hitachi did not intend to pay the Supervisors on a salary basis.

First, Hitachi created an entire, hourly-based pay system for Supervisors that resulted in a linear correlation between the hours they recorded in their timesheets and the amount of pay they received.  *See* Sections A and B, *supra*.  This is *not* indicative of an intent to pay Supervisors on a salary basis.

Second, as described in detail above, these deductions occurred over years (from 2012 to 2017, . . . ), on some occasions during the same pay period and during different pay periods for the same basic improper reason.  *See* Section G, *supra*.  This also specifically included instances, such as scheduled shutdowns, where Hitachi

-9-

made these sorts of downward, hourly pay adjustments for other employees without considering them improper. *Id.*

Third, these deductions were the result of conscious application of Hitachi's pay system to Supervisors by their payroll administrator, who routinely reviewed time records to make these adjustments. *See* Section A(6)-(7), *supra*.

Fourth, Hitachi had no policy prohibiting such deductions, nor did it communicate such a policy, nor did it have any complaint mechanism. *See* Section G, *supra*. In fact, because the pay records Hitachi provided Supervisors were simply inaccurate and provided no information about these pay adjustments, even if there had been such a complaint mechanism, there would have been no meaningful way for Supervisors to identify and address improper deductions. *See* Sections A(2)-(7) and H, *supra*.

Fifth, the timeline of Hitachi's discovery and efforts to pay back these underpayments demonstrate that it had no intention of paying a salary and no commitment to correcting its errors. . . .

In short, the undisputed facts show that Hitachi did not intend to pay Supervisors on a salary basis. In that scenario, the relevant regulations provide that "the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions." 803 KAR 1:070 § 10(4)(b). . . .

Hitachi can only avoid liability by showing that these deductions are "isolated or inadvertent[.]"

. . . .

> The problem for Hitachi's position is that the same facts identified above also show that these are not "isolated or inadvertent" deductions. The Sixth Circuit has held that the federal "window of correction" regulation "allows use of the defense only after an employer has first demonstrated an intention to pay its employees on a salary basis." *Takacs v. Hahn Automotive Corp.*, 246 F.3d 776, 783 (6th Cir. 2001). . . .
>
> . . . .
>
> In short, there is no dispute that Plaintiffs and the Class are entitled to judgment as a matter of law that Hitachi is liable for damages to all Supervisors employed during the pay periods when it improperly deducted the wages of its employees.

November 4, 2021, Memorandum in Support of Partial Summary Judgment at 53-56, 61-64, 66.

In its motion for summary judgment, Hitachi asserted that the undisputed facts showed that it did not violate KRS 337.285(1). Hitachi claimed that it consistently paid the Supervisors a predetermined and guaranteed yearly salary. In addition to such salary, Hitachi also pointed out that in any week a Supervisor worked over forty hours per week, she was paid for overtime on a "straight time" basis until June of 2016.[2] Hitachi's Motion for Summary Judgment at 16. After June of 2016, Hitachi asserted that it capped overtime pay to ten hours per week. According to Hitachi, it paid the Supervisors overtime pay based on an

---

[2] The parties refer to straight time basis as meaning payment at the worker's calculated hourly rate.

-11-

hourly rate derived from their respective predetermined annual salary. Specifically, this hourly rate was determined by taking the Supervisors' yearly predetermined salary and dividing it "by 2,080 (52 weeks per year multiplied by 40 hours per week) or by dividing the monthly salary by 173.33 (2080 hours divided by 12 months)." Hitachi's Motion for Summary Judgment at 35. Hitachi emphasized that the Supervisors received a set guaranteed yearly salary and also received extra pay for hours worked over 40 per week. Hitachi rejected the Supervisors' allegation that their pay for time at or under 40 hour per week was also computed on an hourly basis. Hitachi conceded to making 410 reductions or deductions to the Supervisors' guaranteed annual salary. Hitachi pointed out that the great portion of these deductions (395) were legally permissible deductions and that only fifteen of the deductions were legally impermissible. Even considering the fifteen impermissible deductions, Hitachi maintained that it intended to pay the Supervisors a guaranteed yearly salary. Additionally, Hitachi argued that the fifteen legally impermissible deductions were inadvertent and isolated. Thus, Hitachi maintained that the Supervisors were paid on a salary basis under 803 KAR 1:070 Section 10 and that no violation of KRS 337.285(1) occurred.

By order entered January 13, 2023, the circuit court denied the Supervisors' motion for partial summary judgment and granted Hitachi's motion for summary judgment. In so doing, the circuit court reasoned:

-12-

Plaintiffs have advanced several theories as to why they believe Hitachi was legally required to pay them the overtime rate of pay for all hours worked over forty (40). Hitachi argues that the Supervisors were paid on a "salary basis" making them exempt from the overtime provisions of the KWHA and that neither the pay system utilized by Hitachi as to the Supervisors nor the failure to pay them the overtime rate of pay violated the law. Plaintiffs seek to recover unpaid overtime pay that they claim Hitachi owes them pursuant to KWHA.

In 2019, the Court certified the Class which consists of "[a]ll current and former supervisors (including, without limitation, Production Supervisors, Quality Supervisors, and Warehouse Supervisors) employed by Hitachi in its Berea, Kentucky, manufacturing facilities at any time since April 24, 2012. . . . " The Class was divided into two Subclasses. The first Subclass contains "[a]ll Class Supervisors employed by Hitachi at any time from April 24, 2012[,] to the present." These Supervisors claim that they were not paid on a "salary basis" but on an "hourly basis" and were therefore entitled to overtime pay. The second Subclass contains "[a]ll Class Supervisors employed by Hitachi at any time from April 24, 2012[,] through June 13, 2016." These Supervisors argue alternatively that they qualify for overtime pay under the *reasonable relationship test*.

Plaintiffs' [sic] have asserted three claims in their motion. 1.) Supervisors were paid on an hourly basis without a guaranteed minimum amount of pay and therefore entitled to overtime compensation (one and one-half times their regular rate of pay) for all hours worked over forty (40) in a workweek. 2.) Even if the Supervisors were paid a guaranteed minimum amount of pay, the reasonable relationship test of the KWHA applies to determine when Supervisors were entitled to overtime compensation for hours over forty (40) in a workweek. 3.) Regardless of the outcome of the first two

claims, Hitachi has violated the KWHA by improper deductions of the wages of Supervisors which nullifies any overtime exemption under KWHA for all Supervisors employed during the pay period when the deductions occurred.

. . . .

Under both the KWHA and Fair Labor Standards Act (FLSA) 29 [United States Code] U.S.C. §§201-219, there are certain types of workers to whom employers must pay statutory time and one-half overtime and other types of workers to whom employers have no obligation to pay such overtime. Specifically, employers must pay overtime to workers unless they are exempt from the overtime provisions of the law. KRS 337.010, *et seq.*

. . . .

A central issue in this case is whether Hitachi pays the Supervisors on a "salary basis" in accordance with 803 KAR 1:071 §10(1)(a) and federal counterpart 29 [Code of Federal Regulations] C.F.R. § 541.602(a)(1)-(a)(2). Plaintiffs claim that Hitachi paid them on an "hourly basis." In support of this claim, Plaintiffs state that Hitachi calculated their pay based upon their time records as Hitachi tracked clock-in and clock-out times of Supervisors; that Supervisors had an hourly rate of pay which was reflected on their paystub, that Supervisors' "regular wages" as listed on their paystub were computed by the hour based upon a forty (40) hour workweek; Supervisors received pay for hours over forty (40) in a workweek at their "straight time" hourly rate, the same rate used for hours up to forty (40); and that Supervisors' "regular wages" were occasionally adjusted downward for time they did not work using hourly computations based upon their time records. Plaintiffs argue they received no predetermined amount of pay. Rather, the number of hours they recorded in their time records determined the amount they were paid.

-14-

Plaintiffs also claim Hitachi did not provide them with a guaranteed minimum amount of pay. Plaintiffs argue the facts do not support that Hitachi ever intended to guarantee any amount. . . . Plaintiffs argue that the record shows that Hitachi did not pay Supervisors consistent with a legitimate guarantee and that there were downward adjustments by the hour to their supposed guarantee, some of which Hitachi concedes were improper reductions in pay. . . .

Counsel for Plaintiffs analyzed Hitachi's pay system in comprehensive fashion in their briefing and through oral arguments at the hearing and demonstrated how they believe Hitachi's pay system as to Supervisors is actually based upon calculations involving the combination of hours worked and hourly rate thus making them "hourly basis" employees, despite Hitachi's position to the contrary. Plaintiffs claim that because they are paid on an "hourly basis without a guarantee, they are employees entitled to overtime under the KWHA.

Hitachi disagrees, claiming that the Supervisors are paid on a "salary basis." Hitachi points out that all the Supervisors received either an Employment Agreement or an Offer Letter which confirmed their initial employment or promotion to the position. . . .

. . . .

Hitachi states the "regular wages" amount listed on the Supervisors' paystubs for the specified pay period represents their salary, and upon review of the evidence, the salary amount set forth in the Supervisors' Employment Agreements, Offer Letters, or on the Salary Spreadsheets exactly matched the pay amount listed under "regular wages" on their paystubs, the only exceptions being where deductions occurred to the Supervisors' predetermined amount. The amount

-15-

reflected under "regular wages" was a monthly increment as Hitachi used a monthly pay period until a change to bi-weekly in July of 2019.

As to deductions, the record shows that 5,056 pay periods occurred from April 2012 to August 2020. It appears that in approximately 92% of those pay periods (4,646), the predetermined salary matched the "regular wages" figure on the respective paystubs. Thus, only 410 of those were pay periods where the "salary" amount under "regular wages" did not exactly match the amount contained in Employment Agreements, Offer Letters, or Salary Spreadsheets, and those situations existed because of deductions. In 395 of those 410 pay periods, the deduction was for a lawful reason. Only on 15 occasions were the deductions not in compliance with the regulations over those eight years (discussed below).

In addition to the predetermined salary for all hours worked, Hitachi also pays extra compensation to Supervisors for hours worked over forty (40) in a workweek, but only on a "straight time" rate of pay. This extra compensation provided by Hitachi is voluntary and not required by law. The Supervisors were paid a salary under "regular wages" for all hours worked, plus extra compensation at "straight time" for the hours worked beyond forty (40). . . . In June 2016, the extra compensation was capped to hours recorded over forty (40) and up to fifty (50) hours. . . .
. . . .

Based upon a review of the record and considering the arguments of counsel with respect to this claim, the Court finds Hitachi's position to be well-taken and finds as a matter of law that the Supervisors were paid on a "salary basis."

The Court finds that the elements of the Salary Basis test under the above regulations have been satisfied. The Supervisors regularly received pay on a

-16-

weekly, or less frequent basis. Here, they were paid monthly, until the change to bi-weekly in 2019, both of which constitute pay on "a weekly, *or less frequent basis*." The pay periods for which compensation was paid are reflected in the pay stubs of record at the top of the paystub (i.e., May 1, 2016 – May 31, 2016) and specifically under "pay period."

Hitachi provided Supervisors a predetermined amount of pay. The Court finds Hitachi's Employment Agreements, Offer Letters, and the Salary Spreadsheets all contain the Supervisors' predetermined amounts of compensation, that those amounts were reflected on the paystubs of each Supervisor under "regular wages", and that the amount of compensation under "regular wages" in the paystubs matched the "salary" listed in those Employment Agreements, Offer Letters, and Salary Spreadsheets, the only exceptions being where deductions were applied. As noted above, in all but 15 pay periods over an eight-year span (5,041 out of 5,056 pay periods), these predetermined amounts were paid in full or otherwise subject to lawful deduction. The Employment Agreements and Offer Letters listed the amount of salary, used the term "salary"[.] . . .

. . . .

The Court finds that the 173.33 figure under the "hours" category on the paystubs is used to reach an hourly rate of pay (monthly salary divided by 173.33), which is used for hourly calculations only as to deductions, and for the extra compensation for hours worked in excess of forty (40) at a straight time rate of pay. . . .

. . . .

The Court has reviewed the record which contains the detailed examination of Hitachi's pay system, depositions, powerpoint presentations, payroll

-17-

documentation, and numerous other exhibits, and finds that Plaintiffs have not satisfied their burden to show that they were not paid on a salary basis. The Court finds no genuine issue of material fact exists with respect to this claim, and Hitachi is entitled to judgment as a matter of law.

. . . .

Plaintiffs contend that the reasonable relationship test of the KWHA applies, and that test shows that given the long hours the Supervisors were working each week and the resulting hourly pay over and above the guarantee, the actual earnings received by the Supervisors far exceeded their guarantee such that the two are not reasonably related. This claim is asserted by those Supervisors employed from April 2012 until extra pay was capped in June 2016.

. . . .

The Court finds that the plain language of the regulation precludes application of the reasonable relationship test herein. The regulation states that the reasonable relationship requirement shall apply "only if the employee's pay is computed on an hourly, daily, or shift basis." The Court has found that the Supervisors were paid by Hitachi on a Salary Basis, with a predetermined guaranteed minimum amount of compensation, paid on a monthly basis for this group of Supervisors, plus extra compensation on a straight-time rate for hours worked above forty (40). The Court could find no evidence to show the predetermined amounts were computed by the hour, day, or shift. . . .

. . . .

The permissible deductions from an exempt employee's salary are provided in 803 KAR 1:071 §10(2)(a) and 29 C.F.R. § 541.602(b)[.] . . .

-18-

Where deductions occur outside of those specific exceptions under 29 C.F.R. § 541.602(b), the employer "shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis." 803 KAR 1:071 §10(3); 29 C.F.R. § 541.603(a).

. . . .

Hitachi has admitted that it discovered 15 occasions where improper deductions occurred that did not comply with the regulations. The record indicates that these improper deductions impacted only 13 of the Supervisors and the total sum of the deductions was approximately $6,500.

. . . .

There is no dispute that Hitachi has reimbursed all affected Supervisors, plus double the amount deducted. Plaintiffs raise issues as to the timing of the reimbursement, but there is no timing requirement under the law. . . .

. . . .

The Court finds that these 15 improper deductions were both isolated and inadvertent. They were isolated as they occurred only 15 times over a span of approximately 8 years and affected 13 out of over 200 Supervisors. Further, the Court finds that these improper deductions were inadvertent mistakes based upon the details of the deductions as reflected in the record.

Based upon the record, the Court sees no pattern or course of conduct in taking improper deductions that demonstrates that Hitachi did not intend to pay the Supervisors on a Salary Basis such that the exemption would be lost for any of the Supervisors subject to the improper deductions.

-19-

. . . .

> Based upon the above, the Court finds no genuine issues of fact exist with respect to this claim, and that Hitachi is entitled to judgment as a matter of law. The Court does not believe the circumstances surrounding these 15 deductions are sufficient to constitute a violation of the regulation and thus cause Hitachi to lose the exemption.

January 13, 2023, order denying Hitachi's motion for partial summary judgment at 2-10, 12, 13, 15, 19-22. This appeal follows.

## STANDARD OF REVIEW

To begin, summary judgment is proper where there exists no material issue of fact and movant is entitled to judgment as a matter of law. *See Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991). All facts and inferences therefrom are viewed in a light most favorable to the nonmoving party. In addition, our review of summary judgment is always de novo. *Seiller Waterman, LLC v. Bardstown Cap. Corp.*, 643 S.W.3d 68, 74 (Ky. 2022); *Cunningham v. Kroger Ltd. P'ship I*, 651 S.W.3d 199, 202 (Ky. App. 2022).

## ISSUES

The primary issue in this appeal is whether the Supervisors were paid on a salary basis and thus, were properly classified as executive/supervisory employees exempt from the overtime mandate of KRS 337.285(1). To aid in our examination of this issue, the Kentucky Supreme Court has recognized that the

Fair Labor Standards Act (29 U.S.C. §§ 201-219) and its accompanying regulations are substantially similar to Kentucky law; thus, federal case law may be utilized. *City of Louisville, Div. of Fire v. Fire Serv. Managers Ass'n*, 212 S.W.3d 89, 92 (Ky. 2006). There are two caveats.

First, under federal law, the employer carries the burden to demonstrate that the employee is not entitled to overtime pay at a one and a half times her hourly wage. Conversely, under Kentucky law, the employee carries the burden of proving that she is an employee entitled to overtime pay at a one and one-half times her hourly wage. *City of Louisville*, 212 S.W.3d at 94-95. Second, federal case law that "require[s] an 'exemption' be narrowly construed against the employer are similarly inapplicable here, since the drafting of KRS 337.010(2)(a) to exclude bona fide supervisory employees from its scope does not constitute an exemption." *Id.* at 95. To facilitate the disposition of this appeal, we will not only cite to the pivotal Kentucky regulations but also to appurtenant federal regulations.

## APPLICABLE LAW

This Commonwealth's wage and hour law is set forth in KRS Chapter 337. KRS 337.285(2) mandates an employer to pay an employee a rate of at least one and one-half times her hourly rate for work over forty hours a week. As utilized in KRS 337.285(2), the term employee is defined in KRS 337.010 as:

(2) As used in KRS 337.275 to 337.325, 337.345, and 337.385 to 337.405, unless the context requires otherwise:

> (a) "Employee" is any person employed by or suffered or permitted to work for an employer, but shall not include:

> . . . .

>> 2. Any individual employed in a bona fide executive, administrative, supervisory, or professional capacity, or in the capacity of outside salesman, or as an outside collector as the terms are defined by administrative regulations of the commissioner[.]

KRS 337.010(2)(a)2. Relevant to this appeal, to qualify as an executive or supervisory employee, the executive/supervisor must be compensated on a "salary basis." And, 803 KAR 1:070 Section 10[3] defines salary basis:

> Section 10. Salary Basis. (1)(a) An employee will be considered to be paid "on a salary basis" within the meaning of this administrative regulation if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions in subsection 2 of this section, the employee shall receive his or her full salary for any week in which the employee performs any work without regard to the number of days or hour worked. Exempt employees need not be paid for any workweek in which they perform no work.

---

[3] 803 KAR 1:070 was amended and renumbered as 803 KAR 1:071 in 2020.

-22-

(b) An employee shall not be considered to be "on a salary basis" if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. Accordingly, if the employee is ready, willing and able to work, deductions shall not be made for time when work is not available.

803 KAR 1:070 Section 10(1)(a), (b); *see also* 29 C.F.R. § 541.602 (a)(1), (2).

Thus, to be paid on a salary basis, an employee must receive a guaranteed wage in a predetermined amount on a weekly or less frequent basis that is not subject to impermissible reductions or deductions due to deviations on quality or quantity of work performed. *City of Louisville*, 212 S.W.3d at 96; *Coates v. Dassault Falcon Jet Corp.*, 961 F.3d 1039, 1047 (8th Cir. 2020). The phrase "on a weekly or less frequent basis" has recently been interpreted as meaning:

An employee must be paid on a "weekly [or biweekly or monthly] basis," not on a daily or hourly one. Or said more fully, the "basis" in that phrase is the unit of time used to calculate pay, and that unit must be a week or less frequent measure; it cannot be a day, or other more frequent measure[.]

*Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 52 (2023).

An employee is not paid on a salary basis if deductions to compensation are made based upon the unavailability of work. 803 KAR 1:070 Section 10(1)(b); *see also* 29 C.F.R. § 541.602(a)(2). There are permissible deductions to compensation set forth in 803 KAR 1:070 Section 10(2) and include

days missed for sickness or personal reasons.  *See also* 29 C.F.R. § 541.602(b).

The effect of an employer's impermissible deductions upon the exempt status of an

employee is found in 803 KAR 1:070 Section 10(4), and it provides:

> (4) Effect of Improper deductions from salary.
>
> (a) An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis.  An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis.  The factors to consider if determining whether an employer has an actual practice of making improper deductions include, but are not limited to:  the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer make improper deductions; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions.
>
> (b) If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions. Employees in different job classifications or who work for different manager shall not lose their status as exempt employees.  Thus, for example, if a manager at a company facility routinely docks the pay of engineers at that facility for partial-day personal absences, then all engineers at that facility whose pay could have been improperly docked by the manager lose the exemption;

except engineers at other facilities or working for other manager, remain exempt.

(c) Improper deductions that are either isolated or inadvertent shall not result in loss of the exemption for any employees subject to the improper deductions, if the employer reimburses the employees for the improper deductions.

803 KAR 1:070 Section 10(4)(a), (b), and (c), *see also* 29 C.F.R. § 541.603(a), (b), and (c).

If the employer makes improper deductions from salary, the employer is not entitled to the exemption if "the employer did not intend to pay employees on a salary basis." 803 KAR 1:070 Section 10(4)(a); *see also* 29 C.F.R. § 541.603(a). There are several factors to be considered when determining whether an employer had an actual practice of making improper deductions, which are specifically set forth in 803 KAR 1:070 Section 10(4)(a). *See also* 29 C.F.R. § 541.603(a). Where an employer has an "actual practice of making improper deductions[,]" such employer does not intend to compensate the employee on a salary basis, and the employee is not exempt from the overtime mandate of KRS 337.285(1). 803 KAR 1:070 Section 10(4)(b); *see also* 29 C.F.R. § 541.603(b). Nonetheless, isolated or inadvertent improper deductions "will not result in loss of the exemption . . . if the employer reimburses the employees" for the improper deductions. 803 KAR 1:070 Section 10(4)(c); *see also* 29 C.F.R. § 541.603(c).

## ANALYSIS

The Supervisors assert that they were not compensated on a salary basis because Hitachi calculated their pay on an hourly basis. The Supervisors also claim that Hitachi did not pay the Supervisors a predetermined and guaranteed wage and that Hitachi reduced their wages commensurate with the quantity of work they performed. As a result, the Supervisors allege they were entitled to overtime pay per KRS 337.285(1) and that the circuit court erred by rendering summary judgment in favor of Hitachi.

To support their claim that Hitachi paid them on an hourly basis, the Supervisors maintain that Hitachi alleged that it paid them a predetermined annual salary; however, the Supervisors contend that Hitachi only utilized the annual salary to determine each Supervisor's hourly pay rate by dividing the annual salary "by 12 to yield a monthly amount, then dividing that amount by 173.33 hours (2080 hours ÷ 12 months = 173.33 hours per month)." Supervisors' Brief at 6. Additionally, the Supervisors point out that Hitachi used a timekeeping system to track the time each supervisor worked, including regular time (40 hours per week) and overtime hours. Hitachi automatically deducted time for meal periods each shift and tracked Supervisors' time off work. Additionally, the Supervisors claim that Hitachi improperly deducted from their alleged predetermined salary for hours when they worked less than forty hours per week. As a result, the Supervisors

argue that they were paid on an hourly basis and that annual salary was not a guaranteed amount. Rather, the annual salary was subject to reduction when a Supervisor worked less than forty hours per week; therefore, the annual salary was based upon the quantity of work in contravention of the salary basis test. Moreover, the Supervisors argue that Hitachi engaged in an actual practice of making improper deductions to their salary and did not intend to pay them on a salary basis.

### 1.  Predetermined Salary on a Weekly or Less Frequent Basis

It is uncontroverted that each Supervisor received either an Employment Agreement or an offer letter stating that the Supervisor would be paid an annual predetermined salary. Salary spreadsheets and paystubs for the Supervisors reveal that each Supervisor received either monthly or biweekly pay consistent with the annual predetermined salary unless a deduction was applied. Hitachi did utilize a timekeeping system that tracked the Supervisors' work time, and it did determine each Supervisor's hourly pay by using her predetermined annual salary. In fact, the Supervisors' pay was based upon a two-part salary structure where the Supervisors were paid a predetermined annual salary and also were paid for hours worked per week in excess of forty hours as overtime.[4]  The

---

[4] In June of 2016, the Supervisors' overtime pay was capped at ten hours per week.

-27-

Supervisors were paid overtime at an hourly rate based upon their predetermined annual salary for overtime worked in a week.

803 KAR 1:070 Section 11(1) expressly permits an employer to pay extra compensation to an employee without violating the salary basis test if the base salary remains a guaranteed predetermined amount calculated upon a weekly or less frequent basis. *See also* 29 C.F.R. § 541.604(1). Additionally, the mere tracking of employees' hourly worktime and the payment of extra compensation for hours worked over forty hours a week are "not inconsistent with a finding that they are salaried employees." *City of Louisville*, 212 S.W.3d at 97. So, Hitachi's payment of overtime on an hourly basis and its tracking of the Supervisors' worktime is acceptable so long as Hitachi paid the Supervisors a guaranteed predetermined salary. *See id.*

As to the deductions (410) made by Hitachi to the Supervisors' pay, most of the deductions (395) were permissible. These permissible deductions do not affect the exempt executive/supervisory status of employees. On the other hand, fifteen of the deductions taken from Supervisors' pay were impermissible and may result in the loss of the Supervisors' exempt status if Hitachi did not intend to pay them on a salary basis. 803 KAR 1:070 Section 10(4)(a); *Takacs v. Hahn Automotive Corp.*, 246 F.3d 776, 783 (6th Cir. 2001). An actual practice of making improper deductions demonstrates that the employer did not intend to pay

-28-

the employees on a salary basis, and there is a list of factors in 803 KAR 1:070 Section 10(4)(a) to consider when determining whether the employer had an actual practice of making improper deductions. As Hitachi made improper deductions to the Supervisors' annual predetermined salary, we shall consider the factors set forth in 803 KAR 1:070 Section 10(4)(a) to determine the effect of the improper deductions on the exempt status of the Supervisors.

To that end, it appears that the pay of over two hundred Supervisors at the Hitachi manufacturing facilities in Berea, Kentucky, were examined by the parties and the circuit court. The fifteen impermissible deductions spanned an eight-year period (2012 – 2020) and affected thirteen Supervisors. The total amount of the improper deductions from the Supervisors' pay was $6,570.08.

Viewing the facts most favorable to the Supervisors, we cannot conclude that the Supervisors' have established a genuine issue as to any material fact as concerns whether Hitachi paid the Supervisors a guaranteed wage in a predetermined amount on a weekly or less frequent basis that was not subject to impermissible reductions or deductions due to deviations on quality or quantity of work performed. Rather, the Offer Letters, Employment Agreements, Hitachi's spreadsheets, and Supervisors' paystubs demonstrate that the Supervisors were consistently paid their respective predetermined annual salary unless a deduction was applied. The fifteen instances of improper deductions from thirteen

Supervisors' pay that occurred over an eight-year period is simply insufficient to constitute an actual practice of making improper deductions or to demonstrate an intent by Hitachi to not pay the Supervisors on a salary basis. 803 KAR 1:070 Section10(4)(a), (b); *see also Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1195-96 (10th Cir. 2015); *Block v. City of L.A.*, 253 F.3d 410, 414-15 (9th Cir. 2001); *O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003). Furthermore, the fifteen improper deductions were isolated, and as Hitachi has reimbursed the affected Supervisors for these improper deductions, 803 KAR 1:070 Section 10(4)(c) would apply, thus preserving the exempt status of the Supervisors.

## 2. Reasonable Relationship

As the Supervisors were paid a predetermined annual salary on a weekly or less frequent basis, 803 KAR 1:070 Section 11(2) and its reasonable relationship test are inapplicable. *See also* 29 C.F.R. § 541.604(b). 803 KAR 1:070 Section 11(2) provisions are only triggered when the employee is compensated on a shorter basis than weekly, for instance on a daily, hourly, or shift basis. *See Helix Energy Sols. Group, Inc.*, 598 U.S. at 55-56.

## **SUMMARY**

Accordingly, based on our review of the record below, applicable law, and the circuit court's thorough analysis of the issues presented, we must affirm.

-30-

The circuit court properly granted Hitachi's motion for summary judgment as there exists no genuine issues of material fact as to whether the Supervisors were paid on a salary basis. We view any remaining contentions of error as moot or without merit.

For the foregoing reasons, the circuit court's January 13, 2023, order granting Hitachi's motion for summary judgment is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Jerome P. Prather
J. Conner Niceley
Lexington, Kentucky

J. Chis Sanders
Louisville, Kentucky

David W. Garrison
Joshua A. Frank, *pro hac vice*
Nashville, Tennessee

ORAL ARGUMENT FOR
APPELLANTS:

David W. Garrison
Nashville, Tennessee

BRIEF FOR APPELLEE:

Craig P. Siegenthaler
Timothy J. Weatherholt
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Timothy J. Weatherholt
Louisville, Kentucky